**In re LUCE INDUSTRIES, INC., debtor.**

**No. 81 Civ 0543–CLB.**

United States District Court,
S. D. New York.

April 22, 1981.

Whitman & Ransom, New York City, for petitioner.

Finkel, Goldstein & Berzow, New York City, for respondent.

### MEMORANDUM AND ORDER

BRIEANT, District Judge.

Fruit of the Loom, Inc. appeals from a Memorandum Opinion and Order of the Bankruptcy Court 8 B.R. 100, dated December 24, 1980 (Hon. Burton R. Lifland, Bankruptcy Judge) which authorized the appellee, Luce Industries, Inc., a Debtor-in-Possession under Chapter 11 of the new Bankruptcy Code, to assume a trade-mark license agreement dated November 1, 1978 (the "License") granted by Fruit of the Loom, Inc. to the Debtor for the use of the well-known trademark "Fruit of the Loom" on goods produced and sold by or for the account of the Debtor. The sole issue below was whether the Debtor's proposal to assume satisfied § 365 of the Code, quoted below.

On June 24, 1980, while an involuntary petition under Chapter 7 of the Bankruptcy Code was pending against it, the Debtor filed a petition pursuant to § 706 for relief under Chapter 11 of the Code.

Prior to that date, the Debtor had caused to be manufactured for its account, certain wearing apparel produced by an approved subcontractor acceptable to Fruit of the Loom, on which it used the trademark "Fruit of the Loom", in compliance with the License. In order to preserve its right to enforce its trademark, and for the practical purpose of insuring quality control, appellant reserved the right to inspect the goods for quality.

On July 22, 1980, appellant moved by order to show cause before the Bankruptcy Judge to terminate the License. The Debtor answered and stated its intent to assume the License agreement under § 365 of the Code. The matter was heard before the Bankruptcy Judge solely on the issue of whether the Debtor could meet the requirements of § 365 of the Code, which provides in relevant part as follows:

Section 365 (11 U.S.C. § 365)

Executory Contracts and Unexpired Leases

" * * *

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease."

After extensive hearings, the Bankruptcy Judge rendered his opinion on December 24, 1980, holding that the Debtor had met its burdens under § 365(b)(1) of the Code, and therefore was authorized to assume the executory provisions of the License Agreement.

For the reasons set forth below, this Court reverses and remands the case to the Bankruptcy Court for further proceedings consistent with this memorandum decision.

The Debtor proposed that, as part of its plan to assume the benefits of the License, it would, during its period of reorganization, and probably for the balance of the term of the License, have the goods manufactured for it by a different sub-contractor, Fashion House, Inc., not approved or consented to by Fruit of the Loom. Operating under a new arrangement approved by the court, these goods would be sold directly by the subcontractor, which would recoup first the money due it for manufacturing and old-line factoring, and would remit the License fees to Fruit of the Loom. The balance, or remaining profit, if any, would be available to the Chapter 11 Debtor.

It can be seen from the record developed before the Bankruptcy Judge that this arrangement with the new manufacturer was not the continuation of a prior approved trade practice, but was tantamount to an assignment of the License to Fashion House, an act prohibited in ¶ 8 of the License Agreement. In effect, under the guise of authorizing assumption of an executory contract the Bankruptcy Court has permitted assignment; an evasion of an integral provision in the License.

The proceedings before the Bankruptcy Judge showed that the Debtor had no assets, no employees, no office or showroom and no sales force, and had not had any since it filed its petition for reorganization. Its proposed arrangement was that Fashion House, which refused to guarantee the Debtor's performance to Fruit of the Loom, and was not bound by any of the terms of the License Agreement, would manufacture or purchase goods, affix the Fruit of the Loom trademark to the goods, subject only to approval of the quality of submitted

samples, warehouse the goods and sell the goods, paying money to the Debtor based on the sales price. While this was going on, the Debtor owed Fruit of the Loom substantial funds on its prior sales and showed no assurance of making prompt payment. Under the peculiar circumstances of this case, the Bankruptcy Judge's determination was clearly erroneous.

While we do not doubt that the trademark "Fruit of the Loom" is valuable both to the Debtor-licensee and the licensor, there was no proof that its continued possession was vital to the conduct of the Debtor's business. Price competition in apparel continues, and while it is a valuable mark, it is not so exclusive that loss of the License would necessarily put this Debtor or any debtor out of the textile business.

Fashion House, Inc. was and is a jobber, specializing mainly in discount clothing. It had agreed to act as the Debtor's "contractor" and arrange for the manufacture of finished garments to be sold under the name "Fruit of the Loom". Fashion House also agreed to provide a sales force and to lease a showroom in the New York City garment district. In return for these efforts, Debtor authorized Fashion House to withhold from the proceeds of sale the direct costs of manufacturing, plus a 22% mark-up to cover its other expenses. Fashion House took as collateral an assignment of all of the accounts receivable to be generated by the Debtor's sales; all of them, because Debtor apparently sold nothing but Fruit of the Loom merchandise. These accounts would in turn be sold to the factor for Fashion House, on an old-line factoring basis, at the customary discount. Thus, no credit was provided by Fashion House or by the Debtor in connection with these endeavors. At the same time, the Debtor proposed to borrow money from a small business investment company (the "SBIC") which would clear prior defaults. This money, however, was not in place nor was it committed, at the time that the Bankruptcy Judge made his findings.

Relying on *In Re Bronx-Westchester Mack Corp.*, 4 B.R. 730 (Bkrtcy., S.D.N.Y. 1980), the Bankruptcy Judge recognized that in order to assume the contract the Debtor had to cure the current default in payment due Fruit of the Loom, and provide adequate assurance of future payments. The Bankruptcy Judge correctly concluded that the phrase "adequate assurance of performance" was derived from § 2–609 of the Uniform Commercial Code. The Bankruptcy Judge concluded (p. 23) that Luce had met its burdens because "Luce's testimony (the promises) and its procurement of the Fashion House and [SBIC] agreements had more than shown a willingness *and* ability to succeed in providing Fruit of the Loom with the benefit of its bargain. More importantly the financial defaults will be immediately cured in full through the infusion of capital by [the SBIC]. Luce has further committed itself to rectify curable non-financial defaults [footnote omitted], *i. e.*, submission of proper reports and samples, and its promise in combination with its other efforts is adequate assurance. Lastly, Luce's procurement of the necessary manufacturing capability through its contractor Fashion House satisfies the requirement of adequate assurance of future performance."

This conclusion is totally unfounded for several reasons. Most significant of these is that there was not and is not any assurance that the back debt would be paid. No persons or corporation had made a firm commitment to furnish the money to the Debtor to pay the debt. Under the facts of this case at least, a firm commitment would be essential to "adequate assurance" under the statute. Essentially, what has taken place here is a court-directed assignment of a non-assignable License Agreement. This is not a case where Luce Industries, as a licensee, continues to manufacture and/or merchandise the trademarked goods. Rather, Luce is now nothing but a conduit. It has no office, no showroom, no sales force, and as far as appears, no leadership; it has delegated everything to Fashion House.[1]

---

1. Fashion House specifically disclaims any intention to fulfill the obligations of the Debtor to

Fruit of the Loom (Tr. of August 20, 1980, p. 27). It has no privity of any sort with Fruit of

If Fruit of the Loom, Inc. had wished to franchise Fashion House as a licensee, it could have done so. This is not a situation where an ongoing, pre-filing course of dealing is merely continued. Prior to filing the Debtor did apparently perform a useful function in merchandising the franchised goods. If the prior manufacturer had continued to serve the Debtor, it might be argued that Fruit of the Loom was estopped to object to what amounts to an assignment. But this is not a continuation of the prior manufacturing arrangements under the License Agreement; rather, it is a complete reworking of the procedures under the License Agreement, and there is no assurance whatever of continued performance of the Debtor's side of the License Agreement as it was performed prior to filing, or as it was required to be performed by the specific provisions of the License Agreement.

Accordingly, the order appealed from is reversed.

So Ordered.

the Loom. There is no "adequate assurance" of or to Fruit of the Loom, by Fashion House, within the statute. And there is none by the factor.