In re Richard A. PARENT and Cynthia G. Parent, Debtors.

Richard A. PARENT, Plaintiff,

v.

TEAMSTERS LOCAL 677 HEALTH SERVICES AND INSURANCE FUND, Defendant.

Bankruptcy No. 91–51312.
Adv. Proc. No. 91–5274.

United States Bankruptcy Court, D. Connecticut.

June 16, 1993.

Eugene S. Melchionne, Waterbury, CT, for plaintiff.

Burton S. Rosenberg, New Haven, CT, for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALAN H.W. SHIFF, Bankruptcy Judge.

The defendant, Teamsters Local 677 Health Services and Insurance Fund, moves for summary judgment based on the United States Supreme Court's decision in *District of Columbia v. Greater Washington Bd. of Trade*, — U.S. —, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) invalidating Conn.Gen.Stat.Ann. § 31–284b (West Supp. 1993) which mandated the payment of insurance premiums on behalf of the plaintiff, Richard A. Parent, a chapter 13 debtor. Because I find that Parent's claim is not derived from the invalidated statute, the Fund's motion is denied.

### BACKGROUND

Parent and his wife commenced this chapter 13 case on May 16, 1991. Parent has been employed by Northeast Transportation Co., Inc. ("Northeast") since January 7, 1980 and is a member in good standing of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 677, of Waterbury, Connecticut (the "Union"). Northeast and the Union are parties to a collec-

tive bargaining agreement (the "Agreement") covering the period from May 1, 1991, through April 30, 1994. *See Exhibit "A" to Affidavit of Richard A. Parent*, February 4, 1993. The Agreement requires, *inter alia*, that Northeast make contributions to the Teamsters' Local No. 677 Health Services and Insurance Plan (the "Plan") on behalf of its Union employees. *See Agreement*, Article XXII, at pp. 32–34. The Plan provides for certain distributions to Union members from the defendant Teamsters Local 677 Health Services and Insurance Fund (the "Fund"), including the payment of specified medical and prescription drug expenses. The Plan is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), *see* 29 U.S.C.A. § 1002(1) (West Supp.1993). As noted, *infra* pp. 314–15, the Plan provides that Parent is eligible for reimbursement of medical and prescription drug expense so long as Northeast makes the required contributions to the Plan.

On May 30, 1984, Parent was injured in a motor vehicle accident. Pursuant to the Fund's requirements, Parent assigned his common law tort claim arising from the accident to the Fund. According to the Fund, Parent recovered a judgment on his claim but did not turn over the amount he collected, so the Fund sued him in the United States District Court for the Dis-

trict of Connecticut on February 9, 1988, and that case is pending. In this adversary proceeding, Parent alleges that the Fund violated the automatic stay, *see* 11 U.S.C.A. § 362(a) (West 1993), by setting off his post-petition medical and prescription drug expense against the Fund's alleged prepetition claim arising out of the May 30, 1984 accident. Parent seeks compensation, costs and punitive damages for that violation. *See* § 362(h).

In *Greater Washington*, decided December 14, 1992, the Supreme Court held that ERISA preempted a District of Columbia statute which required employers who provide health insurance for their employees to provide equivalent health insurance coverage for injured employees eligible for workers' compensation benefits. *See* 29 U.S.C.A. § 1144(a) (West 1985). The Supreme Court granted certiorari in *Greater Washington* because a conflict had arisen between the Second Circuit's *R.R. Donnelley & Sons Co. v. Prevost*, 915 F.2d 787 (2d Cir.1990), *cert. denied*, 499 U.S. ——, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991) and the District of Columbia Circuit's *Greater Washington*, 948 F.2d 1317 (D.C.Cir.1991). The Second Circuit held in *Donnelley* that Conn.Gen.Stat. § 31–284b[1] (which the Supreme Court stated was "substantially similar" to the District of Columbia statute, 113 S.Ct. at 583) was *not* preempted by ERISA.[2]

---

1. Conn.Gen.Stat.Ann. § 31–284b (West Supp. 1993), enacted in 1982, provides in relevant part:

   (a) [A]ny employer who ... makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare plan, shall provide to the employee equivalent ... welfare plan payments or contributions while the employee is eligible to receive or is receiving compensation pursuant to [Connecticut's Workers' Compensation Act]....

   (c) In the case of an employee welfare plan, an employer may provide equivalent protection by making payments or contributions for such hours of contributions established by the trustees of the employee welfare plan as necessary to maintain continuation of such insurance coverage when the amount is less than the amount of regular hourly or weekly contributions for full-time employees.

2. The plaintiff concedes that it is "widely assumed" that § 31–284b is preempted by ERISA

based on *Greater Washington. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment*, February 4, 1993, p. 2. On April 27, 1993, the Supreme Court of the State of Connecticut held that § 31–284b was preempted by ERISA and reversed three decisions of Connecticut's Workers' Compensation Review Board. *Frank A. Luis, et al. v. Frito–Lay, Inc., et al.*, No. S.C. 14536 (Conn., April 27, 1993). Significantly, the *Frito–Lay* cases involved disputes between employees and their employer, Frito–Lay, which argued on several grounds (including ERISA preemption of § 31–284b) that it was not obligated to continue making contributions to a Teamsters' Union fund. The cases did not address the effect of the invalidation of § 31–284b on the Union fund's obligation to provide insurance coverage while it was receiving contributions from Frito–Lay, nor the issue of whether *Greater Washington* should apply retroactively. *See Frito–Lay, Inc., supra, Brief for Respondents–Appellants*,

On the basis of its asserted right of setoff, the Fund stopped paying Parent's medical expense on May 16, 1991, the petition date, and it stopped paying his prescription drug expense on June 10, 1991. During the period from May 16, 1991 through January 6, 1993, Parent received worker's compensation benefits and in accordance with § 31b–284 Northeast made contributions to the Fund on Parent's behalf in an amount sufficient to maintain Parent's insurance coverage. *Affidavit of Harry W. Filippone,* January 6, 1993, at ¶¶ 3, 4. Parent argues that the Fund's termination of payments while the Fund was receiving contributions was tantamount to an improper setoff in violation of the stay. In its instant motion, the Fund contends that *Greater Washington* eliminated its obligation to make those payments, so there was no setoff and no violation of the automatic stay. Thus, the issue presented by the Fund's motion for summary judgment is whether *Greater Washington* compels that result.[3]

### DISCUSSION

#### 1.

Rule 56(c) Fed.R.Civ.P., made applicable by Rule 7056 Fed.R.Bankr.P., requires that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

April 2, 1992, *Supplemental Brief of Respondents–Appellants,* January 25, 1993.

**3.** On January 6, 1993, Northeast notified the Fund that on the basis of *Greater Washington* it would no longer make contributions on Parent's behalf. *Affidavit of Corrine Mortagua,* January 6, 1993, at ¶ 6. While Parent claims that he is entitled to the continuation of benefits beyond January 6, 1993 on several theories, *see Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment,* February 4, 1993, at p. 3, that issue is not properly before me in this matter.

In determining whether summary judgment is appropriate, "the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no material facts are in dispute, and all reasonable inferences are to be drawn and all ambiguities are to be resolved against the moving party. *Donahue v. Windsor Locks Bd. of Fire Com'rs,* 834 F.2d 54, 57 (2d Cir.1987). A party opposing a properly supported motion for summary judgment "must offer concrete evidence raising genuine disputes of material fact tending to show that [the opposing party's] version of the events is more than fanciful ... or, alternatively, must show that the [moving party] is not entitled to summary judgment as a matter of law." *Johnson v. Carpenter Technology Corp.,* 723 F.Supp. 180, 182 (D.Conn. 1989) (citation omitted).

#### 2.

■ Section 31–284b does not obligate the Fund to pay Parent's claim.[4] Rather, that section is part of Connecticut's Workers' Compensation Act and obligates *employers* to continue providing insurance coverage or making contributions to employee welfare plans under certain conditions. *See* Conn.Gen.Stat.Ann. §§ 31–275(9), (10), 31–284 (West Supp.1993); *supra* note 1. Therefore, it would appear that the invalidation of § 31–284b by *Greater Washington* does not affect the Fund's obligations to Parent, unless the Fund sustains the burden of proving that

**4.** Indeed, in its memorandum filed in connection with the underlying adversary proceeding, the Fund argued that it terminated Parent's coverage under the Plan on November 27, 1987. Defendant's *Memorandum of Law,* June 16, 1992, at p. 2. This argument must be premised on the Fund's recognition that the Fund had no statutory obligation to maintain coverage while Parent was eligible to receive workers' compensation benefits, as his eligibility for those benefits continued for most of the period from 1987 to the present. *Filippone Affidavit* at ¶ 3.

the invalidation affected its contractual obligations to Parent under the Plan during the relevant period. For the reasons that follow, I find that the Fund has failed to sustain that burden.

■ The Fund's obligations to Parent are governed by the Plan and that contract must be interpreted to effectuate the intent of the parties as determined from its language. *In re Broad Assoc. Ltd. Partnership*, 129 B.R. 328, 331 (Bankr.D.Conn. 1991). In construing a contract,

> [t]he circumstances to be considered are those known to the parties when the [contract] was made.... [P]arties contract with reference to existing law, except when the contract discloses a contrary intention.... While it may be true that the parties could not foresee that the existing law might change, a court cannot import into the agreement a different provision nor can the construction of the agreement be changed to vary the express limitations of its terms.

*Hatcho Corp. v. Della Pietra*, 195 Conn. 18, 20–21, 485 A.2d 1285 (1985) (citations omitted). Performance by a party may be excused where the law intervenes to prohibit such performance, *Worthington v. Charter Oak Life Ins. Co.*, 41 Conn. 372, 407 (1874), or where "(1) [an] event [subsequent to contract formation] made the performance impracticable; (2) the nonoccurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation than the law imposes." *Dills v.*

*Town of Enfield*, 210 Conn. 705, 717, 557 A.2d 517 (1989).

■ ERISA requires that administrators of employee benefit plans provide participants with a summary plan description which "shall be sufficiently accurate and comprehensive to reasonably apprise ... participants and beneficiaries of their rights and obligations under the plan," and must describe "requirements respecting eligibility for participation and benefits ... [and] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C.A. §§ 1021(a), 1022(a)(1), (b) (West 1985 & Supp.1993). Pursuant to those requirements, the Fund provided Parent with a Summary Plan Description (the "Summary") with a letter dated May, 1991. *See Exhibit "B" to Parent Affidavit.*[5] The Summary provides that the employee will

> remain eligible as long as your employer makes the required contributions on your behalf for at least 32 hours per week without interruption or 150 hours in a calendar month.

*Summary* at p. 3.

The Summary also contains the following apparent reference to § 31–284b:

> If you are disabled on the job and receive benefits under a Workers' Compensation Law, your employer may be required by contract to make contributions to the Plan at the rate of not less than 32 hours per week up to a maximum of 12 months. Also, under Connecticut State Law, employers are required to make contributions as long as the employee is receiving or eligible to receive Workers' Compen-

---

**5.** A statement at the beginning of the Summary indicates that nothing in the Summary "is meant to interpret or extend or change in any way the provisions expressed in the Plan or insurance policies." The statement also indicates that the trustees of the Fund have "broad authority to determine eligibility for benefits...." The Summary clearly states, however, that the insured is "eligible to receive the benefits presented in this booklet, in addition to any applicable benefits for which [the insured is] eligible as stated in the policies and the Rules and Regulations." The Fund has not argued that the Summary does not accurately reflect the insurance contract between the Fund and Parent, nor has the Fund filed any other docu-

ment defining that contract or indicating that the terms of that contract have changed in any way since the date of the Summary. ERISA requires that participants and beneficiaries be given written notice of plan modifications. 29 U.S.C.A. §§ 1022(a)(1), 1024(b)(1) (West 1985 & Supp.1993). *See Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir.1990) ("[T]he statute contemplates that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary."). Accordingly, for purposes of the Fund's motion for summary judgment, it is assumed that the Summary accurately reflects the terms of the Plan.

sation benefits.... Life Insurance and other medical benefits for charges incurred due to non-occupational accidental bodily injuries or illness will continue for yourself and your eligible dependents, as long as you are receiving Workers' Compensation payments and contributions are paid to the Fund in a timely manner on your behalf by your employer.

*Summary* at pp. 3, 36.

The Plan thus insured that Parent would remain eligible to receive benefits as long as Northeast was making payments to the Fund, irrespective of why Northeast was making those payments. Rather than conditioning the Fund's obligations on the continued vitality of § 31–284b, the Summary refers to that statute as relating solely to the *employer's* obligation to pay the Fund. The Fund's submissions support this construction. *See Defendant's Memorandum of Law in Support of Motion for Summary Judgment,* January 28, 1993, at p. 3 ("The sole basis upon which the [Fund] provided such benefits in the past is that the Debtor's employer made contributions to the defendant Fund on behalf of the Debtor."); *Affidavit of Corrine Mortagua,* January 6, 1993, at ¶ 7 ("Since the basis of the Fund's coverage of the Debtor is contributions received from the Debtor's employer, the Fund has no obligation to provide insurance coverage for the Debtor *at such times as no contributions are being made on his behalf.*") (emphasis added).

The Fund's obligation to pay Parent's medical and prescription drug expense was not contingent on a statutory obligation of Northeast to continue making contributions to the Fund; rather, the sole condition for that duty was the uninterrupted continuation of Northeast's contributions. As noted, *see supra* p. 313, Northeast made contributions during the entire period in question. I therefore conclude that the invalidation of § 31–284b by *Greater Washington* had no effect on the Fund's contractual obligation to provide insurance benefits to Parent during the relevant period.

### 3.

Even if the Fund's obligations to Parent depend in some measure on the continued vitality of § 31–284b, the Fund has not proven, as a matter of law, that the invalidation of that statute would operate retroactively to eliminate vested contractual rights Parent may have under the Plan. *See James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991); *Welch v. Cadre Capital,* 946 F.2d 185 (2d Cir.1991). The Fund asserts, without citation of authority, that *Greater Washington* had the effect of voiding § 31–284b *ab initio. Defendant's Memorandum in Support of Motion for Summary Judgment,* January 28, 1993, p. 5. Assuming that the rule of *Greater Washington* were applicable and had to be applied retroactively, the Fund still could not prevail on its summary judgment motion.[6] Federal courts are afforded broad authority to fashion relief in a manner that recognizes equitable and reliance interests of the parties and of those "absent but similarly situated." *James B. Beam, supra,* —— U.S. at ——, 111 S.Ct. at 2448; *Lemon v. Kurtzman,* 411 U.S. 192, 208–209, 93 S.Ct. 1463, 1473, 36 L.Ed.2d 151 (1973) ("[T]he propriety of the relief afforded appellants by the District Court, applying familiar equitable principles, must be measured against the totality of circumstances and in light of the general principle that, absent contrary direction, state officials and those with whom they deal are entitled to rely on a presumptively valid state statute...."). The record contains

---

6. The Court held in *James B. Beam* that "it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so." —— U.S. at ——, 111 S.Ct. at 2446. The Court thus held that the rule announced in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), that a Hawaii tax statute was unconstitutional, which rule was applied retroactively to the *Bacchus* parties, had to be applied retroactively in *James G. Beam,* which involved a Georgia statute similar to the invalidated Hawaii tax statute. *Id. Greater Washington* did not address the issue of retroactive application of the rule of law announced in that case. The respondent Greater Washington Board of Trade sought to enjoin the District of Columbia from enforcing the statute at issue, and thus was seeking only *prospective* relief. —— U.S. at ——, 113 S.Ct. at 582.

insufficient facts to permit this court to determine whether there exist equities or reliance interests entitled to this court's protection. Accordingly, the Fund's summary judgment motion must be denied.

## ORDER

The Defendant's Motion for Summary Judgment is denied and IT IS SO ORDERED.