**In re PRIME MOTOR INNS, INC., et al., Debtors.**

**Bankruptcy No. 90–16604–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

April 22, 1994.

Stephen D. Busey, E. Lanny Russell, Smith Hulsey & Busey, Jacksonville, FL, for Prime Motor Inns, Inc., et al.

Eugene Van Voorhis, Van Voorhis & Van Voorhis, Rochester, NY, and Susan D. Laskey, Fort Lauderdale, FL, for Sandra Lee Rueckwald.

### ORDER DETERMINING DEBTOR'S COMPLIANCE WITH 11 U.S.C. § 365(b)(1)

A. JAY CRISTOL, Chief Judge.

This cause was heard on December 16, 1993, to determine Prime Motor Inns, Inc.'s ("Prime") compliance with this Court's order of August 17, 1992 directing Prime to make certain repairs to a hotel property. The Court having considered the evidence, and having heard argument of counsel, makes the following findings of fact and conclusions of law:

### Findings of Fact

1. On September 18, 1990 (the "Petition Date"), Prime, Passaic Company, Inc. ("Passaic") and certain of their affiliates (collectively, the "Prime Debtors") filed petitions for reorganization under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the Southern District of Florida.

2. On March 19, 1991, the Prime Debtors filed a motion (C.P. 1762) seeking authority to, among other matters, assume certain unexpired leases.

3. Included within the motion was a request by Passaic for authority to (i) assume a lease dated November 22, 1960, as amended (the "Ground Lease"), between Passaic, as lessee, and the co-trustees Sandra Lee Rueckwald and Chase Lincoln First Bank, as lessors (collectively, "Rueckwald"), of real property located in Rochester, New York (the "Premises") and (ii) assume a sublease agreement dated July 18, 1986, between Patcon Motor Lodges, Inc. ("Patcon") and Passaic for the Premises.

4. The Ground Lease terminates in the year 2005, with Passaic having options to renew the Ground Lease until 2045. At the end of the term, Passaic is required to turn over to Rueckwald the Premises together with the 96–room hotel constructed on the Premises at Prime's expense. Base rent under the Ground Lease is $1,666 a month, and therefore the Ground Lease (because of income in excess of this rent generated by the Prime-constructed hotel) has material economic value to the Prime Debtors. Thus, termination of the Ground Lease would be a substantial economic forfeiture to the Prime Debtors.

5. Section VI, paragraph 5 of the Ground Lease as amended on March 19, 1969, provides:

No default or breach of covenant hereunder shall be deemed to have occurred on

the part of the lessee until 30 days after written notice of such default or breach shall have been given to the lessee, and the lessee within such time shall have failed to remedy such default or breach.

A Rueckwald representative acknowledged at the hearing that no notice of default has been given to Passaic after the August 17, 1992 hearing on assumption of the Ground Lease.

6. Rueckwald initially objected to Passaic's assumption of the Ground Lease, claiming that Rueckwald terminated the Ground Lease prior to the Petition Date. By order of this Court dated December 4, 1991, Rueckwald's objection was overruled and Passaic authorized to assume the Ground Lease. This assumption required a showing that Passaic (i) had cured any defaults under the Ground Lease and (ii) demonstrated adequate assurance of future performance under the Ground Lease (the "Primary Assumption Order").

7. On December 16, 1991, Rueckwald filed a notice of appeal from the Primary Assumption Order (the "First Appeal").

8. Pursuant to the Primary Assumption Order, this Court on February 6, 1992, held a hearing to determine what action was necessary for Passaic to cure defaults under the Ground Lease and provide adequate assurance of future performance.

9. By order dated April 3, 1992, this Court confirmed the Prime Debtors' second amended joint plan of reorganization, as modified.

10. On August 17, 1992, this Court directed that Passaic (i) pay Rueckwald $43,176.22 for taxes and for prepetition and postpetition rent and (ii) complete certain repairs to the hotel within six months of the order becoming final and nonappealable (the "Cure Order"). Specifically, the Cure Order provides in pertinent part:

It is ORDERED that:

(1) Within 10 days of this order becoming final and nonappealable, the Debtor shall pay the Landlord $43,176.22 for prepetition taxes, prepetition percentage rent and postpetition rent;

(2) *Within 6 months of this order becoming final* and nonappealable, the Debtor shall complete the repairs agreed upon as necessary to cure default consisting of:

a) repairs set forth in a report by Contract Consultants, dated January 29, 1992, which the Debtor introduced into evidence,

b) repairs to some balconies and repainting and recarpeting rooms in need of such maintenance.

(Emphasis added).

Passaic complied with paragraph (1) above by timely making the required tax and rental arrearage payments to Rueckwald.

11. On August 28, 1992, Rueckwald filed a notice of appeal from the Cure Order.

12. On September 17, 1992, Rueckwald filed a motion for clarification of the Cure Order by which it sought a ruling that Passaic was required to perform the specified repairs even though Rueckwald had appealed the Cure Order.

13. By order dated September 23, 1992, this Court denied the clarification motion stating:

The movants wish to have their cake and eat it too. They want to force the Debtor to begin curing without the Debtor being able to ascertain the necessary conditions to assume by virtue of a final order.

．　　　．　　　．　　　．　　　．

The [Cure Order] has not become final because the movants have sought an appeal.

14. On the same date the clarification motion was denied, Rueckwald voluntarily dismissed its appeal of the Cure order.

15. On June 24, 1993, the United States District Court for the Southern District of Florida dismissed the First Appeal as interlocutory.

16. After August 1992, Patcon commenced repairs on the Premises pursuant to the Cure Order. Subsequently, Patcon defaulted on its sublease, stopped making rental payments and ceased making the repairs. In May 1993, Passaic initiated eviction proceedings against Patcon to regain possession of the Premises.

17. On July 6, 1993, the day before Patcon was to be evicted, it filed a petition for relief under Chapter 7 of the Bankruptcy

Code in the United States Bankruptcy Court for the District of New Jersey.

18. On September 22, 1993, Prime moved for relief from the automatic stay in Patcon's Chapter 7 proceeding. A hearing on the motion for stay relief was held on October 12, 1993 and the New Jersey Bankruptcy Court granted stay relief to Prime.

19. On November 15, 1993, Passaic reacquired possession of the Premises. It thereafter promptly proceeded to complete the repairs specified in the Cure Order.

20. On November 19, 1993, Prime contracted for roof repairs on the Premises costing approximately $129,000. Prior to this hearing, these roof repairs and all other repairs required by the Cure Order were substantially complete.

21. Passaic has spent approximately $225,000 on repairs to the Premises for the purposes of effecting the required repairs since entry of the Primary Assumption Order.

22. The construction management expert (whose report on the Premises determined the majority of the repairs to be made pursuant to the Cure Order) revisited the Premises on October 23, 1993 and December 13, 1993. His testimony at the hearing was that the required repair work had been substantially completed by December 13, 1993, including repairs to the roof, parking lots and balconies. This testimony was not materially disputed.

23. Subsequent to entry of the Primary Assumption Order, Rueckwald has regularly received and accepted without objection monthly Ground Lease payments from Prime.

### Conclusions of Law

24. This Court has jurisdiction pursuant to 28 U.S.C. Sections 157 and 1334, and Section 365 of the Bankruptcy Code. This proceeding is core within the meaning of 28 U.S.C. Section 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. Section 1409.

25. The Court finds from the greater weight of the evidence that the repairs specified in the Cure Order have been substantially completed.

26. Rueckwald contends that these repairs were not timely completed. However, because Rueckwald appealed the Primary Assumption Order and it was subject to reversal, the Cure Order could have no effect until the First Appeal was either decided or dismissed.[1] If the Primary Assumption Order were reversed, the Cure Order would be meaningless. Therefore, the dismissal of the First Appeal on June 24, 1993, is the date from which the 6–month time period to complete the repairs begins to run. Thus, Passaic had until December 24, 1993 to complete the repairs as specified in the Cure Order. Accordingly, Passaic timely completed the repairs.

27. Even assuming, as Rueckwald contends, that the time to complete the repairs expired before the dismissal of the First Appeal, Passaic's untimely completion of the repairs is excused due to Patcon's intervening bankruptcy and resulting legal prohibition against Prime taking the Premises to complete the ordered repairs.

> Performance by a party may be excused where the law intervenes to prohibit such performance.
>
> *In re Parent,* 155 B.R. 310, 314 (Bankr. D.Conn.1993).

*See also, In re Mutual Leasing Corp.,* 424 F.2d 999, 1000 (5th Cir.1970) (Time period for filing appeal is tolled where "the party is fairly and in fact prevented from complying by circumstances completely beyond his control").

28. Additionally, Rueckwald demonstrated no prejudice resulting from the times at which Prime completed the repairs.

> Rueckwald Order [the Cure Order] does not constitute a final determination that Passaic will ultimately be allowed to assume the lease. Thus, the first order [the Primary Assumption Order] did no more than determine that the lease was not terminated, i.e., it was assumable.

---

1. The District Court found that both the Cure Order and the Primary Assumption Order are not even now final orders. In its order dismissing the First Appeal, the District Court stated:

   *Neither Rueckwald order* [the Primary Assumption Order or the Cure Order] *is final* or appealable ... even Judge Cristol's Second

29. Once Passaic became aware that Patcon had ceased making the repairs to the Premises, Passaic promptly initiated eviction proceedings against its subtenant Patcon. Despite Passaic's efforts to regain the Premises to timely complete the repairs, Patcon's delay of the eviction proceedings and its subsequent bankruptcy filing prevented Passaic from making any repairs until the automatic stay was lifted and possession of the Premises was regained. In a similar case, the Eighth Circuit has stated:

> Clearly EMRO [the lessee] was permitted to sublease. Thus, it should not be penalized for matters beyond its control, for instance, the inability to repossess the leased premises because of bankruptcy law. EMRO had a duty however, to move expeditiously to seek to lift any stay which precluded repossession.

*EMRO Marketing Co. v. Plemmons*, 855 F.2d 528, 530 (8th Cir.1988).

30. At the December 16, 1993 hearing, Rueckwald raised claims of past due payments for overage rents and taxes on the Premises which alleged breaches occurred after entry of the Cure Order on August 17, 1992. Rueckwald contended that these are defaults under the Ground Lease which prevent its assumption. However, these alleged breaches of the Ground Lease cannot be defaults because Rueckwald never provided the required notice of breach to Passaic. Moreover, these alleged breaches (which are post-assumption and post-confirmation) are properly now the subject of a state court proceeding to enforce the Ground Lease and not the proper basis for reconsideration of prior rulings of this Court regarding assumption of the Ground Lease. *In re Paradise Valley Country Club*, 26 B.R. 990, 992 (Bankr.D.Colo.1983), *aff'd.* 31 B.R. 613 (D.Colo.1983); *In re Allied Technology, Inc.*, 43 B.R. 304 (Bankr.S.D.Ohio 1984).

31. In any event, the repairs to the Premises are substantially complete. Except for a few minor items, the roof, parking lots, interior and exterior repairs are complete and have significantly improved and added value to the Premises. The Bankruptcy Court is a court of equity and will do equity in this case. The court does not favor granting a windfall to landlords in derogation of the purposes of bankruptcy reorganization. *See, In re Huntington Ltd.*, 654 F.2d 578, 584 (9th Cir.1980); *In re Queens Blvd. Wine & Liquor Corp.*, 503 F.2d 202, 205 (2d Cir. 1974).

32. Finally, Passaic has provided adequate assurance of future performance as required by Section 365(b)(1)(C) by complying with the Cure Order and making a significant investment in the Premises. Additionally, Passaic has a strong "incentive not to default under the [Ground] Lease since, pursuant to the Lease, it would forfeit its improvements on the real property leased, a motel into which the Debtor has allegedly invested $1,500,000." Cure Order, pg. 3. Moreover, the phrase "adequate assurance of future performance," for purposes of Section 365(b)(1)(C), "is to be given a practical, pragmatic construction based upon ... the circumstances of [the] case." *In re Carlisle Homes, Inc.*, 103 B.R. 524, 538 (Bankr.D.N.J. 1988); *Accord In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 754 (Bankr. S.D.N.Y.1986); *In re Sapolin Paints, Inc.*, 5 B.R. 412, 420 (Bankr.E.D.N.Y.1980). Finally, the assurance of future performance is adequate if performance is likely (i.e. more probable than not); the degree of assurance necessary falls considerably short of an absolute guaranty. The Prime Debtors have met their burden of demonstrating adequate assurance of future performance.

33. The objective of Section 365 of the Bankruptcy Code is to protect the landlord, not to improve its position. *Westview*, 59 B.R. at 754; *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr.S.D.N.Y.1986); *Sapolin Paints*, 5 B.R. at 420. Giving the Premises back to Rueckwald would materially improve its position and significantly prejudice the Prime Debtors.

### Conclusion

For these reasons, it is ORDERED AND ADJUDGED that the Prime Debtors have complied with the cure requirements of the Cure Order and may assume the Ground Lease.

Done and Ordered.