**In re PRK ENTERPRISES, INC.**

**Bankruptcy No. 99–10415.**

United States Bankruptcy Court,
E.D. Texas,
Beaumont Division.

July 6, 1999.

Bruce Partain, Wells, Peyton, Beard, Greenberg, & Hunt, L.L.P., Beaumont, TX, for Creditor.

J. Craig Cowgill, J. Craig Cowgill & Associates, P.C., Houston, TX, for Debtor.

*MEMORANDUM OF DECISION RE-GARDING ASSUMPTION OF UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY*

BILL G. PARKER, Bankruptcy Judge.

This matter is before the Court upon the "Motion for Authority to Assume Certain Lease Agreements with Golden Triangle Dairy Queens on Non–Residential Real Property" (the "Motion") filed by PRK Enterprises, Inc. ("PRK" or "Debtor"), the Debtor–in–Possession in the above-referenced Chapter 11 case. The motion seeks authority under § 365(a) of the Bankruptcy Code to assume three unexpired leases of non-residential real property upon which PRK operates Dairy Queen restaurants. Based upon the Court's consideration of the pleadings, the evidence admitted at the hearing, including the stipulations of the parties, and the argument of counsel, the Court makes the following findings of fact and conclusions of law [1] pursuant to Fed.R.Civ.P. 52, as incorporated into contested matters in bankruptcy cases by Fed.R.Bankr.P. 7052 and 9014.

## I. JURISDICTION.

This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has the authority to enter a final order regarding this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (O).

1. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

2. Following the filing of the motion to assume which revealed PRK's intent to abandon its three Port Arthur restaurant locations, the Court subsequently granted to GTDQ a termination of the automatic stay as to those locations.

## II. FINDINGS OF FACT.

PRK commenced this Chapter 11 case by the filing of a voluntary petition on March 3, 1999. At the time of the filing, PRK operated six Dairy Queen restaurants, three in Port Arthur, Texas, as well as singular locations in Nederland, Port Neches and Groves, Texas, respectively, in the so-called "Mid–County" area of Jefferson County, Texas. Leased premises were utilized at all six restaurant locations, pursuant to separate lease agreements executed on January 1, 1993 by and between PRK and a single lessor, Golden Triangle Dairy Queens, Inc. ("GTDQ"). Under the lease agreements, PRK agreed to lease the restaurant premises for a term of ten years and to pay rent equivalent to six (6%) percent of its gross sales, with a minimum of $2,000 due to GTDQ on a monthly basis.

Following its decision to concentrate its restaurant business in the Mid–County area, PRK filed this motion to assume the leases on the three Mid–County locations.[2] GTDQ filed a response to the Motion in which it claimed (1) there was a substantial arrearage due to defaults under the three remaining leases which PRK had to cure as a prerequisite to assumption; (2) that GTDQ was entitled to payment for actual pecuniary losses it suffered as a result of the defaults; and (3) that PRK must bring post-petition rent payments current pursuant to 11 U.S.C. § 365(d)(3) before PRK could assume the leases in question.[3]

PRK and GTDQ stipulated at the hearing on the Motion that the aggregate monthly "rent"[4] on the three Mid–County

3. Though all three of these arguments were presented in GTDQ's response, at the hearing GTDQ offered no evidence on the actual pecuniary losses suffered as a result of the lease defaults. Furthermore, GTDQ did not raise the issue of post-petition rent defaults. Therefore the Court finds that GTDQ has waived these arguments.

4. This amount includes the aforementioned fixed percentage of sales or $2,000.00 whichever is greater, property tax escrow on the store locations, and interest. The parties both acknowledged that in December of each year

locations in question is $8,010.00, and that the aggregate arrearage owed on the three locations, prior to the application of moneys paid by PRK, is $46,285.65. The parties further agreed that PRK had tendered to GTDQ, prior to the entry of the order of relief in March, two $5,000.00 payments. PRK seeks to apply that whole sum to the arrearage on the three locations which it now wishes to assume, while GTDQ argues that, since the two payments were made while PRK was operating all six locations, it would be inequitable to allow PRK to apply the entire $10,000.00 to the three locations which it has now decided to keep and that, since PRK is assuming only 50% of the leases, only 50% of the $10,000.00 sum should be credited towards the outstanding arrearage on the Mid–County locations. The Court finds that only $5,000.00 of the previous payments may be properly applied to the arrearage amount on the Mid–County locations and that, prior to the hearing, the outstanding arrearage on the leases in question totaled $41,-285.85.

PRK submitted through Eileen Klein, its Chief Financial Officer, that while it currently possessed $18,000.00 in cash and was financially prepared to make the June rent payment of $8,010.00 immediately, it was incapable of paying the arrearage figure, even under its calculations, in one lump-sum payment. The Debtor proffered that it was financially capable of curing the arrearage in six (6) equal monthly installments. In support of this testimony, PRK also tendered budget projections for the months of June through September, 1999.

The budget indicated that, following the payment of all expenditures for the month[5], the sum of $5,911.00 will remain which PRK offered to apply to the payment of the arrearage.[6] Ms. Klein, on behalf of the administration of PRK, further testified that she and her husband received a total monthly salary of $7,200.00 from the debtor corporation which they would be willing to forego in order to dedicate such funds to the reduction of the arrearage, if such was necessary. While it did not seriously question the Debtor's operational budget figures, GTDQ asserted that PRK's proposal to pay the arrearage in installments did not satisfy the Bankruptcy Code's requirement that a default under an unexpired lease be "promptly" cured as a prerequisite to assumption of such a lease.

At the conclusion of the hearing, the Court issued an interim order requiring PRK, within three (3) days, to tender the June rent payment as well as a $6,000.00 payment on the arrearage, thereby lowering the arrearage amount to $35,285.85, and took the matter under advisement in order to give the parties an opportunity to submit briefing to the Court regarding what constitutes a "prompt" cure of a default under 11 U.S.C. § 365(b)(1)(A).[7]

### III. *CONCLUSIONS OF LAW.*

§ 365(b)(1) of the Bankruptcy Code provides that:

> [I]f there has been a default in an executory contract or unexpired lease of the debtor, the trustee[8] may not assume

---

they conduct a reconciliation of the rental amounts due and owing for the preceding calendar year.

5. Included among the expenditures deducted to reach the net figure of $5,911.00 is the agreed aggregate monthly rent of $8,010.00 owed to GTDQ for the three Mid–County locations.

6. It should be noted that neither party sought to introduce PRK's operating reports or any other evidence by which the Court could otherwise judge the credibility of PRK's projections.

7. Because of the obvious necessity of the premises upon which the three remaining restaurants are located, there is no dispute in this case that the Debtor–in–Possession's assumption of the three lease agreements is in the best interest of this estate, if the prerequisites for assumption can be properly met.

8. A debtor-in-possession in a chapter 11 case is, of course, authorized to exercise most of a trustee's functions and duties, including those existing under § 365 of the Code. *See* 11 U.S.C. § 1107(a).

such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under contract or lease.

■ The Bankruptcy Code does not define the term "promptly" as it is used in § 365(b)(1). GTDQ asserts that the Bankruptcy Code requirement of a "prompt" cure cannot, as a matter of law, be satisfied by a proposal to pay arrearage amounts in installments, but instead, must be paid in a lump-sum manner prior to assumption. However, the plain language of § 365(b)(1), as expressed above, precludes such a narrow interpretation. The language utilized in subsection (A) clearly provides an option to a party seeking to assume an executory contract or an unexpired lease. The assuming party can either immediately cure the default, or it can provide adequate assurance that it will promptly cure the default. GTDQ's reading of the statute violates proper statutory construction, as well as common sense, by rendering as redundant and superfluous the phrase regarding adequate assurance of a prompt cure.[9]

■ What constitutes a "prompt" cure as required by § 365(b)(1)(A) depends upon the facts and circumstances of each case. *In re Embers 86th Street, Inc.*, 184 B.R. 892, 900 (Bankr.S.D.N.Y.1995). While courts are often reluctant to find that a default is being promptly cured when the proposed period for such cure exceeds two years, *see Matter of DiCamillo*, 206 B.R. 64, 72 (Bankr.D.N.J.1997) and cases cited therein, there is not a clear litmus test or set of factors which can be rigidly applied in order to make this determination. *See In re Coors of North Mississippi, Inc.*, 27 B.R. 918 (Bankr.N.D.Miss.1983) [curing of $110,000–$115,000 default within 3–year period considered prompt in light of prospective longevity of successful business operations]. Some courts have found it useful to contrast the proposed "curing" period with the remaining life of the unexpired lease, and have found a proposed cure to be "prompt" so long as the proposed period for curing the default does not extend to the end of the lease period. *See, e.g. In re Gold Standard at Penn, Inc.*, 75 B.R. 669, 673 (Bankr.E.D.Pa.1987) [finding proposal to cure over 5–year period unacceptable since only six years remaining on the lease]; *accord, In re R/P International Technologies*, 57 B.R. 869 (Bankr.S.D.Ohio 1985); *In re Berkshire Chemical Haulers, Inc.*, 20 B.R. 454, 458 (Bankr.D.Mass.1982).

Thus, the legal position advocated by GTDQ, that the § 365(b)(1)(A) requirement of a "prompt" cure can never be fulfilled by a proposal to cure lease arrearages through installment payments, is not only precluded by the plain language of the statute, it has no support in the jurisprudence analyzing the proper grounds for assumption of an executory contract or an

---

9. Nor is GTDQ's position supported by the authorities which it presented to the Court in its supplemental brief. Neither the Fourth Circuit's decision in *In re Shangra-La, Inc.*, 167 F.3d 843 (4th Cir.1999) (holding that a landlord was entitled to an award of attorneys' fees under § 365(b)(1)(B)), nor the Seventh Circuit's decision in *Matter of Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169 (7th Cir. 1996) (holding that a subsequent chapter 7 trustee may not sue to recapture cure payments made to a landlord after a chapter 11 debtor-in-possession has exercised its right to assume a lease) can properly be read to preclude the curing of lease arrearages in installments. The third case cited by GTDQ, *In re Embers 86th Street, Inc.*, 184 B.R. 892, 900 (Bankr.S.D.N.Y.1995), actually supports the approach embraced by this opinion.

unexpired lease agreement under § 365 of the Bankruptcy Code.

■ Equally without support is GTDQ's allegation that the specific proposal tendered by PRK to cure the existing arrearages within six months from the order authorizing the assumption of the lease agreements fails to offer a "prompt" cure of the existing defaults. The PRK proposal is a reasonable proposition, in light of the fact that all three leases at issue in this matter expire in 2003 and have approximately forty-two (42) months remaining in their respective terms. Under PRK's proposal, therefore, all arrearages owing to GTDQ under the leases will have been paid with three years still remaining on the original term of each lease. In light of the applicable jurisprudence, the PRK proposal cannot be legitimately characterized as challenging the boundaries of what constitutes a "prompt" cure of defaults under § 365(b).

■ However, an analysis under § 365(b)(1)(A) is not just a chronological one. Not only must a debtor's cure of existing defaults be "prompt" in order to support an assumption under § 365(b), such debtor must also provide, as a prerequisite to assumption, adequate assurance that it can make the proposed cure payments within the specified period. "Adequate assurance of a prompt cure requires that there be a firm commitment to make all payments and at least a reasonably demonstrable capability to do so." *In re Embers 86th Street, Inc.,* 184 B.R. at 900–01, quoting *In re R.H. Neil, Inc.,* 58 B.R. 969, 971 (Bankr.S.D.N.Y.1986). Such adequate assurance can be demonstrated by establishing a "foundation that is nonspeculative and sufficiently substantive to assure the landlord that it will receive the amount of the default." *Matter of World Skating Center, Inc.,* 100 B.R. 147, 148–49 (Bankr.D.Conn.1989). In determining whether such assurance is "adequate," a court should strive to minimize the risks

imposed upon a lessor as it awaits receipt of the curative payments.

■ PRK has demonstrated by a preponderance of the evidence that it has the financial capability to make the payments necessary to cure the arrearages under its proposal. Its financial projections, which were not rebutted nor even seriously contested by GTDQ, establish that the three Dairy Queen restaurants owned by PRK will generate a combined net profit of $5,911.00 per month, following the payment of all expenditures including the aggregate monthly rental amount owed to GTDQ. The application of that sum alone is sufficient to cure the outstanding arrearages within six months.

However, as Ms. Klein acknowledged, additional sums to pay the arrearage could be made available from the sums currently allotted for PRK administrative salaries. The Court finds that, under such circumstances, it is appropriate for the Debtor's principals to engage in some degree of sacrifice in order to eliminate the outstanding deficits owing to GTDQ in the most expeditious manner possible. By combining the sum of $2,910.50 from the amounts currently budgeted for monthly salaries for Mr. and Mrs. Klein with the projected monthly net profit of $5,911.00, the cure period can be reduced from six months to four months, thereby decreasing the risks imposed upon GTDQ by the payment scheme without the necessity of imposing upon the Debtor's principals a draconian deprivation of compensation for services to be tendered by the Debtor's principals in the coming months. The Court thus concludes that PRK's payment of the sum of $8,821.50 over a period of four (4) months will fulfill its obligation under § 365(b)(1)(A) to provide adequate assurance of a prompt cure of all existing defaults under its lease agreements with GTDQ.

■ As a final prerequisite [10] to its assumption of the leases under § 365(b)(1),

---

**10.** Though it makes a passing reference to the statutory provision in its pleadings, GTDQ

the Debtor must also provide adequate assurance of future performance under the lease agreements. This requirement "is to be given a practical, pragmatic construction based upon … the circumstances of [the] case." *In re Prime Motor Inns, Inc.,* 166 B.R. 993, 997 (Bankr.S.D.Fla.1994), quoting *In re Carlisle Homes, Inc.,* 103 B.R. 524, 538 (Bankr.D.N.J.1988). Assurance of future performance is adequate "if performance is likely (i.e. more probable than not)" and the degree of assurance necessary to be deemed adequate "falls considerably short of an absolute guaranty." *Id.* The financial evidence presented by PRK demonstrates the likelihood that it has the financial capacity to perform its future obligations under the lease agreements and that its principal officers are serious in their commitment to rehabilitate this corporation. Accordingly, this Court concludes that PRK has met its burden to provide adequate assurance of future performance as required by § 365(b)(1)(C).

Therefore, the Court concludes that PRK has met the requirements of § 365(b)(1) for assumption of its three unexpired lease agreements with GTDQ and that, in addition to its monthly rental obligations, PRK shall tender to GTDQ the sum of $8,821.50 on or before the twentieth (20th) day of the month for a period of four (4) months, beginning on July 20, 1999, pursuant to its obligation to promptly cure all existing defaults under its lease agreements with GTDQ. A separate order will be entered which is consistent with this opinion.

presented no evidence nor argument regarding any claim which it might possess for actual pecuniary loss under § 365(b)(1)(B). Thus, the Court mentions this section only to acknowledge its existence in passing.